United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Freddie Aponte, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 15-21854-Civ-Scola |
| | ) **In Admiralty** |
| Royal Caribbean Cruises, Ltd., | ) |
| Defendant | ) |

### Order on Motion for Summary Judgment

This case arises out of Plaintiff Freddie Aponte's slip and fall, in 2014, in a restroom aboard one of Defendant Royal Caribbean Cruises, Ltd.'s cruise ships. Previously, the Court granted summary judgment in Royal Caribbean's favor, finding Aponte had failed to show there was a genuine issue of material fact regarding Royal Caribbean's notice of, or the open-and-obvious nature of, the dangerous condition that resulted in Aponte's alleged injuries. At the same time, the Court noted it was unlikely Aponte would be able to establish his injuries were caused by the fall. Aponte appealed the Court's decision and the Eleventh Circuit vacated the Court's order, concluding there were, in fact, genuine issues of material fact with respect to both Royal Caribbean's notice as well as whether the condition was open and obvious. The Eleventh Circuit also expressed uncertainty as to whether Royal Caribbean had met its initial burden, at the summary-judgment stage, with respect to causation and declined to decide that issue, in the first instance, in its opinion. The Eleventh Circuit thus remanded this case for further proceedings consistent with its opinion.

Upon remand, the Court has reviewed, anew, the parties' briefing of Royal Caribbean's motion for summary judgment, as well as the materials properly submitted in support of the parties' positions, with respect to the causation issue. Based on that review, and the Eleventh Circuit's opinion, the Court **grants** Royal Caribbean's motion **in part and denies it in part**, as follows. (**ECF No. 71**.)

### 1. Legal Standard

"[U]nder Rule 56, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Reese v. Herbert*,

527 F.3d 1253, 1268 (11th Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis in original omitted). Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*,477 U.S. at 322; Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

2. **Analysis**
A. **Aponte cannot establish causation for a number of his medical claims without expert testimony.**

In its motion for summary judgment, Royal Caribbean argues that "[a]bsent support from any medical expert, . . . there is no record evidence to establish medical causation in this case." (Def.'s Mot. 19.) In his response, Aponte does not address Royal Caribbean's argument directly but maintains he "sustained injuries to his back and neck, ultimately requiring two surgeries"—a lumbar laminectomy and a neck fusion—and "nerve injuries to his right arm" as well as "post-traumatic stress disorder, depression and chronic pain syndrome." (Pl.'s Resp., ECF No. 82, 1–2.) The only evidence Aponte points to, however, in order to refute Royal Caribbean's causation-failure argument, is a report, of sorts, issued by one of Aponte's doctors, Dr. Nizam Razack—a

neurosurgeon.[1] (*Id.* at 5 (¶ 31), 8 (¶ 16), 9 (¶¶ 17, 18).) For the following reasons, the Court grants Royal Caribbean's motion to the extent Aponte claims damages for the following: his two surgeries; persistent injuries that are intertwined with his pre-existing conditions; nerve injuries to his right arm; post-traumatic stress disorder; depression; and chronic pain syndrome.

**(1) The Court excludes Dr. Razack's report from its consideration of Royal Caribbean's motion for summary judgment and Aponte's opposition to that motion.**

To begin with, Aponte's reliance on Dr. Razack's report fails. In response to Royal Caribbean's motion and statement of undisputed facts, "Aponte simply refers to his expert witness's report generally, includes argument in his attempt to contest the material fact, and fails to actually refute the material fact." (Order, ECF No. 128, 4 n. 4.) As a result, the Court did not, in its first order, consider the cited report. Upon a review of the Court's decision, the Eleventh Circuit concluded that it was not clear error for the Court to have excluded the report from consideration based on Aponte's failure to comply with Local Rule 56.1. *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 Fed. App'x 531, 535 (11th Cir. 2018). For the same reason, the Court, once again, excludes Dr. Razack's report.[2]

In his attempt to get around these shortcomings, Aponte now seeks leave to amend his opposition to Royal Caribbean's motion, or, alternatively, asks the Court to simply consider Dr. Razack's report. The Court **denies** this request (**ECF No. 159**) for two reasons. First, Aponte was represented by counsel at the time his opposition was filed and Aponte's new counsel has not presented any persuasive reason why Aponte should now be afforded a second bite of the apple at this late stage of the litigation.

Secondly, Dr. Razack's report falls far short of qualifying as a Rule 26 expert report. A plaintiff "b[ears] the burden of establishing the reliability of its expert's report" and district courts are "obligated to perform the critical 'gatekeeping function mandated by [Federal Rule of Evidence] 702 to ensure the reliability of [an expert's] methods." *Broussard v. Maples*, 535 Fed. App'x 825, 827 (11th Cir. 2013) (citations and quotations omitted). The Court is "under no obligation to hold a *Daubert* hearing" nor, under the circumstances of this case, at this late stage of the litigation, need the Court "otherwise

---

[1] Although it appears Aponte retained a psychologist to present expert testimony regarding his psychological conditions, no report from this expert is included in the summary-judgment record.

[2] Aponte references the report in his own statement of facts as well. (Pl.'s Resp. at 8–9.) These references also fall far short of complying with Local Rule 56.1.

provide the plaintiff[] with an additional opportunity to lay a proper foundation for the admissibility of [the] report." *Id.* at 827–28.

Here, Dr. Razack's one-and-a-half page, double-spaced, report is cursory and superficial. Dr. Razack briefly summarized Aponte's presentation and treatment and then, without explanation, abruptly set forth his belief that Aponte's "need for [] cervical and lumbar surgery and evaluation and medical treatments were the result of the injury he sustained on the cruise ship in May 2014." (Dr. Razack Rep., ECF No. 58-1, 2.) He then perfunctorily pointed to the following as generally supporting his opinion: "the patient's history, symptoms, physical exam, EMG studies and . . . MRI scans and the intraoperative findings at surgery." (*Id.*) Dr. Razack provided no further detail or analysis. Contrary to the requirements of Rule 26, Dr. Razack's report does not contain "the basis and reasons for" his opinions; the specific "facts or data [he] considered" in forming his opinions; his qualifications; or "a statement of the compensation [he is] to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Additionally, regarding causation, "[a]n expert witness must be able to state an opinion, based on a reasonable degree of medical certainty, that the defendant's negligence is more likely than anything else to have been the cause of [the] plaintiff's injuries." *See Drury v. Cardiac Pacemakers, Inc.*, 8:02CV933T-17MAP, 2003 WL 23319650, at *3 (M.D. Fla. June 3, 2003). In short, Aponte has fallen far short of meeting his burden of establishing the reliability of Dr. Razack's report.[3] For this additional reason, the Court does not find that the report amounts to admissible expert evidence that should be relied upon in considering opposition to a motion for summary judgment. As a result, the Court will, again, exclude the report in evaluating Royal Caribbean's motion for summary judgment and Aponte's opposition thereto.

**(2) Based on the record presented, the Court finds there is insufficient evidence upon which a reasonable factfinder could find in Aponte's favor regarding the bulk of his claimed injuries.**

"When the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required." *Rivera v. Royal Caribbean Cruises Ltd.*, 711 Fed. App'x 952, 954 (11th Cir. 2017) (citing *Kellner v. NCL (Bahamas), Ltd.*, 15-23002-CIV, 2016 WL 4440510, at *2 (S.D. Fla. Aug. 22, 2016) (Altonaga, J.), *aff'd on other grounds*, 16-15837, 2018 WL 4150851 (11th Cir. Aug. 29, 2018) for the application of this rule in maritime cases). This rule may apply even where there is a close temporal relationship between the incident and the

---

[3] Even Aponte himself acknowledged, beyond the deadline to supplement, that the report "may not fully comply with the requirements of [Rule] 26(a)(2)." (Pl.'s Mot. For Ext., ECF No. 58, 2–3.)

injury. For example, in *Kellner*, cited by the Eleventh Circuit in *Rivera*, the plaintiff presented evidence that, after she fell while on a cruise ship, she sought treatment in the ship's medical center where an x-ray showed she had ruptured her Achilles tendon. 2016 WL 4440510 at *1. Despite this evidence, the court in *Kellner* found the "[p]laintiff's alleged injuries [were] not readily observable such that they would be susceptible to evaluation by lay persons." *Kellner*, 2016 WL 4440510 at *2. As described by the Eleventh Circuit on appeal, the district court granted the cruise line's motion for directed verdict because the plaintiff "lacked an expert opinion to tie the fall to the ruptured Achilles tendon." *Kellner v. NCL (Bahamas), LTD.*, 16-15837, 2018 WL 4150851, at *2 (11th Cir. Aug. 29, 2018); *but see Cooper v. Marten Transp., Ltd.*, 539 Fed. Appx. 963, 967 (11th Cir. 2013) (noting that "*Georgia law* allows jurors to weigh the timing of a plaintiff's symptoms in determining proximate causation, and medical testimony is not needed to prove causation") (emphasis supplied).

In another example, the Eleventh Circuit found that a cruise-ship plaintiff could not show proximate causation that her brain injury resulted from hitting her head on a swinging door without a medical expert. *Goncharenko v. Royal Caribbean Cruises, Ltd.*, 734 Fed. App'x 645, 648 (11th Cir. 2018). This was so even though the plaintiff there presented deposition testimony that blood ran "profusely" down her face immediately after the incident and that she was treated by a neurologist for a traumatic brain injury upon her return home. *Goncharenko v. Royal Caribbean Cruises, Ltd.*, CV 16-21461-CIV, Pl.'s Resp., ECF No. 33, 7 (S.D. Fla. March 20, 2017) (Scola, J.).

Further complicating matters here are two additional issues. The first is Aponte's medical history prior to his fall. The second is the vague and confusing testimony Aponte provided regarding both the mechanics of his fall as well as the nature of his injuries and pain.

In evaluating Aponte's prior medical history, the Court has considered the entirety of the two depositions Royal Caribbean presented in conjunction with its motion for summary judgment: Aponte's own deposition (ECF No. 71-1) and one of his treating physician, Dr. Scott Sherman's, deposition (ECF No. 71-3). According to Aponte, prior to his fall, he suffered from several medical issues, including depression; anxiety; neck pain; and lower-back pain. With respect to his battles with depression, Aponte's testimony was equivocal, but, even reading the evidence in the light most favorable to him, it appears there can be no genuine dispute he indeed suffered from depression before his fall. Although he maintained, at one point in his deposition, he couldn't remember if he had been diagnosed with depression before the cruise, when pressed, he acknowledged he believed he "probably" had been (Aponte Dep. at 166:18–20) or that he "may have" (*id.* at 168:12–15). Finally, Aponte admitted he actually

had a history of depression prior to his cruise but that it hadn't been as severe as it was at the time of his deposition, in 2016. (*Id.* at 205:22–206:1.) Regarding his treatment for depression, Aponte said that he had started taking anti-depressant medication sometime between August and October 2016 (over two years after his alleged fall). (*Id.* at 9:13– 22.) Aponte's testimony regarding his history of anxiety was more straightforward, with Aponte testifying he has "always ha[d] anxiety." (*Id.* at 157:21.) He further elaborated that he had been on anxiety medication before his fall (*id.* at 158:13–19) and that he had been seeing a psychiatrist since 2010 or 2011 (*id.* at 159:22–160:2). Aponte explained his psychiatric care was precipitated by a "ministroke" that he had suffered in 2010 or 2011. (*Id.* at156:14.) He also reported a history, pre-fall, of dizziness (*id.* at 156:22–23), kidney stones (*id.* at 162:16), high blood pressure (*id.* at 164:7–9), hypothyroidism (164:24–165:20), and needing to take medication for his "nerves" and "twitching," in not only his arm, but his whole body (*id.* at 246:1–24). Additionally, he recounted having to see a pain management doctor prior to his fall. (*Id.* at 207:23–208:1.)

Aponte's self-reported medical history regarding his neck pain was also not entirely clear. Although he denied, at one point, having neck pain prior to his fall (*id.* at 170:11–13), he later clarified, acknowledging that he had in fact had neck pain prior to his fall but that it was a different kind of neck pain—an aching pain for which he was taking Advil or Tylenol for relief. (*Id.* at 169:17–20.) And while he initially attributed the "muscle tightness" he felt in his neck, prior to the fall, to the aging process (*id.* at 169:20, 170:24–171:2) or simply the way he was sitting or lying down (*id.* at 176:6–17), he later admitted his doctor had told him, before his fall, that he had disk herniations in his neck (*id.* at 178:23–25.) Notwithstanding his initial denial that he had ever seen a doctor about the pain in his neck, before his fall (*id.* at 214:11–18), when pressed, Aponte admitted he might have but just could not remember (*id.* at 214:20–215:2). In contrast, Dr. Sherman unequivocally testified that Aponte had sought treatment in 2013 complaining of, among other issues, "bilateral neck pain." (Dr. Sherman Dep. at 9:14–18.) In the face of all the evidence indicating a prior history of neck pain and disk problems, the Court does not find this issue to be genuinely disputed.

Aponte's testimony, that he suffered from lower-back pain prior to his fall, was less complicated. While at times he claimed not to specifically recall receiving treatment for his lower back prior to the fall (*id.* at 173:10–21, 179:7–12, 183:1–4), Aponte also acknowledged having gone to a chiropractor as early as 2006 because of his low-back pain. (*Id.* at 174:2–9.) He further admitted that a "couple of years" prior to his fall, he had been experiencing not only low-back pain (*id.* at 175:8–10), but also low-back pain that extended into his buttocks (*id.* at 190:20–22) as well as pain all over his body (*id.* at 169:21–

170:1). And although Aponte wavered at times about whether he had sought medical treatment for his lower back before the fall (*id.* at 173:10–21, 179:7–12, 183:1–4), he ultimately testified, at least three times, that he had indeed seen a doctor for his lower-back pain before he fell (*id.* at 174:17–20; 182:17–21; 192:10–12) and that he had been diagnosed with a degenerative condition in his lower back (*id.* at 178:4–19). He also acknowledged that, prior to the fall, he had had a history of chronic back pain (*id.* at 207:17–21) and that he had had an MRI taken of his back which revealed he had a "bulging" of some sort (*id.* at 186:15–18, 187:16–188:8). Despite these issues, however, Aponte maintained that, at the time of his fall, his back was nonetheless "stable" (*id.* at 175:4–6) and at that time he was not taking any pain medication (*id.* at 195:18–24).

Regarding Aponte's lower back, Dr. Sherman testified that, prior to the fall, Aponte had been diagnosed, in October 2013, with lumbago (Dr. Sherman Dep. at 22:8–10), lumbosacral spondylosis without myelopathy (*id.* at 22:24–23:2), sacroiliitis (*id.* at 23:11–13), and chronic pain syndrome (*id.* at 23:20–22). Dr. Sherman also noted, consistent with Aponte's own testimony, that Aponte had a disk bulge prior to his fall which was revealed by an MRI in October 2013. (*Id.* at 31:7–10.) Based on the summary-judgment record, Aponte cannot genuinely dispute that he had a prior medical history of back issues before his fall.

Furthermore, in addition to the complicating issues related to Aponte's preexisting conditions, the record regarding the nature of the incident that resulted in Aponte's claimed injuries further hampers his ability to show causation. Aponte could not recall which foot slipped on the soap in the bathroom, but he said that, as he began to fall, a portion of his right arm, from the base of his pinkie to halfway towards his elbow, struck the edge of a countertop. (Aponte Dep. at 90:9–91:21.) Aponte also explained that his right buttock hit the floor first, followed by his right arm. (*Id.* at 92:9–93:3.) He further said that the area from slightly below his right buttocks to just above his right buttock, to his mid to low back area, all hit the floor at the same time. (*Id.* at 94:8–13.) Elaborating, Aponte said that his "arm saved most of the fall" (*id.* at 94:6) and that his right leg was never really on the floor because while he was "trying to save the fall with [his] arm, [he] end[ed] up standing up." (*Id.* at 95:3–6.) Aponte testified that, as a result of the fall, he injured "[his] neck, [his] lower back and [his] arm." (*Id.* at 168:20.) When asked to clarify the injury to his arm, Aponte explained that his arm pain began immediately after his arm struck the counter (*id.* at 275:4–6) and that "it's a problem that I have with the nerve, and it goes right under my armpit and it goes up" (*id.* at 168:25–169:3). He then clarified that "the problem" "goes to [his] neck," by way of his shoulder. (*Id.* at 169:4–9). Regarding his neck, Aponte testified that, after his fall, and

after his adrenaline subsided and "the medication went away," his neck began to hurt—approximately one to eight hours afterwards. (*Id.* at 197:20–198:1, 199:17–23.) Aponte also testified that immediately after the accident, he had back pain. (*Id.* at 200:16–18.)

Based on the evidence in the summary-judgment record, a lay factfinder would not be able to connect many of Aponte's claimed injuries to the mechanics of his fall without expert testimony. To begin with, "[w]ithout medical expert testimony, it is not possible to distinguish between the ailments [the plaintiff] experienced before the fall and those [the plaintiff] experienced after—and due to—the fall." *Rivera*, 711 Fed. App'x at 955. That is, where there is a "potential continuance of a disease," expert testimony is required to establish a causal connection. *Calhoun v. Wal-Mart Stores E., LP*, 1:14-CV-2581-CC, 2017 WL 9362708, at *4 (N.D. Ga. July 24, 2017) (citing *Jordan v. Smoot*, 191 Ga. App. 74, 74 (1989)). Only if the preexisting condition "had disappeared prior to the tortious event" would a lay factfinder be able to find causation without expert testimony. *Calhoun*, 2017 WL 9362708 at *4 (citing *Bruce v. Classic Carrier, Inc.*, 1:11-CV-01472-JEC, 2014 WL 1230231, at *6 (N.D. Ga. Mar. 24, 2014)). Here, the record shows that a number of the injuries Aponte complains of are intertwined with his preexisting conditions. And although Aponte described his condition as "stable," prior to the fall, even reading the evidence in the light most favorable to him, the record cannot be read to imply that any of his several conditions had actually "disappeared" before his fall. In fact, even though one of Aponte's treating physicians acknowledged a possible aggravating factor affecting his degenerative disk disease, he also opined that all of Aponte's diagnoses after his fall were "long term things." (Dr. Sherman Dep. at 27:15–16.) Regardless, without expert testimony, a lay factfinder would not be able to distinguish between Aponte's extensive prior medical history of depression, anxiety, neck and back pain, and chronic pain syndrome, on the one hand, and his current complaints of those same issues, on the other. *Cf. Bruce*, 2014 WL 1230231 at *8 (denying defendant's motion for summary judgment, under Georgia law, where "plaintiff reported symptoms soon after [his] accident—the arm pain—that he had not experienced for years prior to the accident.").

In a similar vein, and reading the evidence in the light most favorable to Aponte, in comparing many of Aponte's alleged injuries to the event he claims caused them, the Court concludes common knowledge alone could not prompt a finding of causation. Aponte has not presented either any record evidence or legal argument rebutting Royal Caribbean's submission that the causal link between Aponte's alleged injuries and the mechanics of his fall are not readily apparent or observable. Divining a proximate cause between the fall (as portrayed in the record and viewed in the light most favorable to Aponte) and

any of Aponte's lingering injuries or maladies would amount to pure speculation. In his opposition to Royal Caribbean's motion for summary judgment, Aponte maintains that, as a result of his fall, he has sustained injuries to his back and neck, ultimately requiring two surgeries: a lumbar laminectomy and a 3[-]level anterior cervical fusion and discectomy . . . at C5, C6, and C7." (Pl.'s Resp. at 1.) He also claims to have "sustained nerve injuries to his right arm and is currently suffering from post-traumatic stress disorder, depression and chronic pain syndrome." (*Id.* at 1–2.) None of these medical issues are "readily observable" "and, therefore, expert testimony as to the cause of such injuries is required." *Morhardt v. Carnival Corp.*, 304 F. Supp. 3d 1290, 1299 (S.D. Fla. 2017) (Graham, J.) (citing *Crest Prods.*, 593 So.2d at 1076–77 for the proposition "that lay testimony alone was insufficient to support finding of causation where medical conditions—leg and low back pain related to acute lumbar disk herniation—were not readily observable" and *Wilson v. Taser Int'l, Inc.*, 303 Fed. App'x 708, 715 (11th Cir. 2008), applying Georgia law, for the proposition that "the inference that an electric shock by a TASER can and did cause compression fractures in the plaintiff's spine was not a natural inference that a juror could make through human experience"). As a result, the Court concludes that partial summary judgment is appropriate with respect to all of Aponte's claims for injuries which are not readily observable: specifically, his back and neck injuries requiring his two surgeries; the nerve injuries to his right arm; post-traumatic stress disorder; depression; and chronic pain syndrome.

### B. Aponte's damages claims do not appear to be limited to medical claims that require expert testimony.

On the other hand, resolving the aforementioned issues on a motion for summary judgment, does not resolve the entirety of this case. In his complaint, Aponte maintains that, as a result of his slip and fall, he has "suffered bodily injuries and resulting pain and suffering, physical and mental pain and anguish, disability, loss of capacity for the enjoyment of life, expense of hospitalization, surgery and medications, loss of earnings in the past, loss and/or impairment of the ability to earn money, expenses for physical and occupational therapy, and medical and nursing expenses." (*Id.* at ¶ 13.) The claims addressed by Royal Caribbean in its motion for summary judgment are limited only to those requiring expert testimony: "Absent support from any medical expert, Royal Caribbean . . . submits there is no record evidence to establish medical causation in this case." (Def.'s Mot. At 19.) Royal Caribbean's motion, then, is focused only on those claimed injuries which are not readily observable. As a result, Royal Caribbean fails to demonstrate, in the first

instance, the absence of a genuine issue of material fact with respect to any of Aponte's injuries that may have been, in fact, readily observable.

And, indeed, the record indicates some injury claims for which expert testimony may not be necessary. For example, in a guest service log report, attached to Aponte's response to Royal Caribbean's motion, it appears the ship doctor noted that Aponte would need two weeks to recover from his fall. (Rep., ECF No. 82-1, 1.) The report indicates, and Aponte testified, that he needed a shot of morphine for the pain following his fall. (*Id.*; Aponte Dep. 201:13–18.) Prior to his fall, Aponte maintains that he never needed morphine for his pain. (*Id.* at 201:19–21.) The evidence also shows that Aponte needed a wheelchair to disembark from the ship the following day. Further, Aponte testified that he incurred various unspecified, "out-of-pocket expenses as a result of the subject incident." (Aponte Dep. at 252:20–22.) Establishing a link between Aponte's immediate pain, need for a wheelchair and morphine, and incurring various expenses, on the one hand, and the fall, on the other, does not appear to be beyond a factfinder's common knowledge and experience, depending on other evidence Aponte might present at trial. Because Royal Caribbean's motion does not directly address any other, perhaps readily observable, injuries that Aponte may have sustained, Aponte was not on notice that any of those potential claims were being challenged. And, because Royal Caribbean's motion addresses only injuries that require expert testimony and fails to address the universe of injuries or damages that Aponte appears to be claiming, the Court is unable to grant summary judgment with respect to *all* of Aponte's claimed damages. *See, e.g., Schmaltz v. Norfolk & W. Ry. Co.*, 896 F. Supp. 180, 182 (N.D. Ill.1995) (noting that "[e]xpert testimony is generally required to establish a causal connection between the accident and injury '*unless* the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile'") (emphasis added) (citing 4 F. Harper, F. James, O. Gray, The Law of Torts § 20.2 (2d ed. 1986)); *Whitehead v. City of Bradenton*, 8:13-CV-2845-T-30MAP, 2015 WL 1810727, at *4 (M.D. Fla. Apr. 20, 2015) ("Plaintiff may offer testimony regarding her 'readily observable' physical injuries including the bruising, swelling, abrasions and the immediate pain she experienced as a result of the [incident]."); *see also Frasca v. NCL (Bahamas), Ltd.*, 654 Fed. App'x 949, 955 (11th Cir. 2016) (finding error where a district court sua sponte entered summary judgment on a claim not identified in a party's summary judgment motion) (citing *Gentry v. Harborage Cottages–Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir. 2011). The Court therefore concludes that only partial summary judgment is warranted.

### 3. Conclusion

As set forth above, the Court grants partial summary judgment in Royal Caribbean's favor, thus **granting** its motion **in part**. (**ECF No. 71**.) As a result of the Eleventh Circuit's opinion vacating of the Court's prior order, Royal Caribbean's motion is **denied, in part**, regarding its notice and the open-and-obvious nature of the hazard that resulted in Aponte's fall. As a result of the Court's granting only partial summary judgment with respect to causation, there remain unresolved issues after the Court's ruling on Royal Caribbean's motion.

To that end, the Court grants Aponte's unopposed request, as presented in the parties' joint status report (ECF No. 158), to respond to Royal Caribbean's pretrial motions and to file his own pretrial motions. Further, the parties must comply with the following schedule:

| | |
|---|---|
| **March 8, 2019** | Deadline for the Plaintiff to file his responses to the Defendant's *Daubert* motions and motion in limine (to the extent the issues raised in those motions are not mooted by this order). |
| | Deadline for the Plaintiff to file his own pretrial motions, limited, as set forth in the Court's initial scheduling order, to one motion in limine and one *Daubert* motion. |
| **April 1, 2019** | Deadline to file joint pretrial stipulation under Local Rule 16.1(e) and pretrial disclosures as required by Federal Rule of Civil Procedure 26(a)(3).[4] |
| **April 15, 2019** | Deadline to file proposed findings of fact and conclusions of law consistent with Local Rule 16.1(k). |
| | Deadline for the parties to serve any deposition designations on opposing counsel and deadline for the parties to file those designations with the Court. Objections and cross designations thereto must be served, filed, and replied to as set forth in the Court's earlier entered scheduling order. |
| | Deadline for the parties to submit their exhibit and witness lists. |

This matter is set for a bench trial during the two-week trial period beginning **April 29, 2019**. Calendar call will be held at 9:00 a.m. on **April 23,**

---

[4] The parties, in their status report, ask the Court to set a deadline for them to submit their proposed voir dire questions. This is not a jury trial and thus there will not be a voir dire.

**2019** at the Wilkie D. Ferguson, Jr. United States Courthouse, 400 N. Miami Avenue, Courtroom 12-3, Miami, Florida. A pretrial conference will be held immediately following calendar call only if requested by the parties in advance. Should the parties conclude that this case may be resolved without a trial, they must notify the Court immediately.

**Done and ordered** at Miami, Florida on February 26, 2019.

Robert N. Scola, Jr.
United States District Judge